UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIAM A. WHITE,

Petitioner,

v.                                                        Case No: 6:17-cv-689-Orl-28GJK
                                                              (6:13-cr-304-Orl-28GJK)

UNITED STATES OF AMERICA,

Respondent.
_____/

## ORDER

This cause is before the Court on the Fourth Amended Motion to Vacate, Set Aside,

or Correct Sentence ("Fourth Amended Motion to Vacate," Doc. 32) filed by William A.

White pursuant to 28 U.S.C. § 2255. The Government filed a Response in Opposition to

the Motion to Vacate ("Response," Doc. 40) and a Supplemental Response in Opposition

to the Motion to Vacate ("Supplemental Response," Doc. 50) in compliance with this

Court's instructions and with the *Rules Governing Section 2255 Proceedings for the United

States District Courts.* White filed a Reply (Doc. 60) to the Responses. As discussed below,

the Fourth Amended Motion to Vacate is denied.

## I.    PROCEDURAL BACKGROUND

A Grand Jury charged White by Indictment with five counts of extortion by interstate communication. (Criminal Case No. 6:13-cr-304-Orl-28GJK, Doc. 1).[1] White was charged with sending three e-mails containing extortionate threats involving Judge Walter Komanski, State Attorney Lawson Lamar, and Agent Kelly Boaz (Counts One, Two, and Three) and for posting the extortionate threats on the websites of the American Defamation League and the Southern Poverty Law Center (Counts Four and Five). The Indictment alleged that White threatened to kidnap, rape, and murder these individuals with the intent to extort these official into dismissing state charges against members of a white supremacist organization known as the American Front. Judge Komanski had signed the arrest warrants for the American Front members, Lamar was the State Attorney in the Ninth Judicial Circuit at the time of the arrests, and Boaz was the case agent assigned to the American Front investigation.

A jury found White guilty as to all counts. (Criminal Case Doc. 69). The Court adjudicated White guilty of the crimes and sentenced him to imprisonment for a total term of 210 months. (Criminal Case Doc. 90). The Eleventh Circuit Court of Appeals affirmed the conviction and sentence. (Criminal Case Doc. 142).

---

[1] Criminal Case No. 6:13-cr-304-Orl-28GJK will be referred to as "Criminal Case."

## II. Factual Background[2]

According to the trial evidence, while Defendant was on federal probation in the Western District of Virginia, he absconded with Sabrina Gnos to Mexico in early-May 2012. On the car ride from Roanoke, Virginia, to Mexico, Defendant and Gnos stopped at places such as Starbucks and McDonald's because Defendant wanted to use the free internet. Although Defendant did not permit Gnos to bring any electronics, he brought along a Toshiba laptop computer and used it to send emails and talk to people on Facebook. During the trip, Defendant and Gnos talked about Charles Manson and they listened to the Beatles song "Helter Skelter." Defendant also told Gnos about a software program called TOR, which allows an individual to mask the location of his internet IP address so that the Government cannot find the geographic location of that individual.

Prior to leaving the United States, Defendant had asked Gnos to take care of his affairs while he was out of the country. As a result, he added her to his bank account and provided her with the key to his post office box. Accordingly, after the two arrived in Mexico, Defendant gave Gnos money to drive his car back to Virginia. He also asked her to mail several packages along the way. Gnos mailed the items when she got back to Virginia.

On May 11, 2012, Judge James C. Turk (a now-deceased judge from the United States District Court for the Western District of Virginia who had presided over an unrelated federal case involving Defendant) received a package at his home address that had a return address from Tom Bondurant (the Assistant U.S. Attorney who prosecuted the unrelated federal case against Defendant). The package contained a book written by Defendant entitled "The Centuries of Revolution," and a handwritten message stating, "Be glad it's just a book, pig." On the same day, Bondurant, and his supervisor, Timothy Heaphy (the United States Attorney for the Western District of Virginia), also received packages that contained Defendant's book, as well as handwritten messages.

---

[2] This Factual Background is from the Opinion of the Eleventh Circuit Court of Appeals dated June 30, 2016, noting "[t]he following facts are taken from the trial, viewed in the light most favorable to the Government. *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004)." (Criminal Case Doc. 142, at 3 n.2).

On May 18, 2012, at 10:21 A.M., the email address, "nslf_helterskelter@hotmail.com," was created. Approximately ten minutes later, the nslf_helterskelter@hotmail.com email address was used to send a threat directed at Judge Turk, which demanded the termination of the legal proceedings against Defendant. Almost immediately after that email was sent, the Facebook account for the username, "Bill White," posted the text of the threat directed at Judge Turk.

The next day, at 2:03 P.M., the Bill White Facebook account posted a request for information pertaining to the names of the judges, federal prosecutors, and FBI agents involved in the American Front case. The Bill White Facebook account later wrote that the state officials involved in the American Front case were Judge Komanski, Lawson Lamar, and Boaz.

A short time thereafter, the Bill White Facebook account posted a photo of Lawson Lamar's family and listed the names of Lamar's wife, adult children, and grandchildren. Then, approximately thirty minutes later, Lawson Lamar received a [threatening] email from nslf_helterskelter@hotmail.com, which is the subject of Count 1. The email stated in relevant part:

> Okay PIGS. DIG THIS and DIG IT WELL:
>
> This is JOE TOMASSI, CHARLES MANSON AND SON OF SAM talking to YOU all at once and telling what is gong [sic] to go down.
>
> We are at your houses, we are at your kids houses we are at your grandkids houses and we are sitting outside their schools. Don't believe me? Here you are pigs, here you are:
>
> Kelly J Boaz
> [redacted address]
> Sanford, FL [redacted]

Lawson Lamar
[redacted address]
Winter Park, FL [redacted]

Walter G Komanski
[redacted address]
Orlando, FL [redacted]

. . .

You have arrested FOURTEEN RIGHTEOUS BROTHERS AND SISTERS with the AMERICAN FRONT organization. Monday morning, you are going to go to work and you are going to drop all state charges against them and LET THEM GO. AND BY THEM, WE MEAN:

. . .

IF YOU DO NOT COMPLY WITH THIS ORDER, we are going to grab your grandchildren Lawson Lamar— [names redacted]—from school and we are going to FUCK THEM WITH KNIVES. Then, we are going to CUT THEIR FUCKING HEADS OFF and leave them in a COOLER OUTSIDE YOUR OFFICE, and with the BUCKET OF BLOOD WE WILL PAINT PIG ON YOUR WALLS.

Don't believe us? We just CREEPY CRAWLED the home of JAMES C TURK for the righteous brother WILLIAM A WHITE and we will CREEPY CRAWL ALL OVER YOUR ASS LIKE POISON SPIDERS.

YOU MADE A DEAL WITH THE DEVIL TO BE WHO ARE AND THE DEVIL HAS COME TO COLLECT.

YOURE A KILLER KELLY—AND YOU ARE NEXT. KOMANSKI AND LAMAR—THE PACT YOU ALL MADE, THE PRICE THAT YOU ALL PAID, THE

CHANCE YOU CHOSE TO TAKE, THE CHOICE
YOU CHOSE TO MAKE.

THE DEVIL is coming FOR HIS DUE. And when he
comes, there WILL BE BLOOD.

/s/

NATIONAL         SOCIALIST         LIBERATION
FRONT—HELTER SKELTER BRIGADE

The following day, May 20, 2012, at 2:35 P.M., the same threatening
email directed at Judge Komanski, Lawson Lamar, and Boaz, was sent by
the nslf_helterskelter@hotmail.com email address to three different media
outlets     and     to     Defendant's     personal     email     address,
"dhyphen@yahoo.com." This email is the subject of Count 2. Within
minutes of this email being sent, the Bill White Facebook account posted a
virtually identical copy of the email to its page.

Shortly   thereafter,   the   Bill   White   Facebook   account   posted
information about the architecture business of Thomas Lamar, Lawson
Lamar's adult son. Within minutes of this post, Thomas Lamar received a
threatening email from nslf_helterskelter@hotmail.com at his work
address. This [threatening] email is the subject of Count 3 and stated in
relevant part:

All right pigs, DIG IT:

We tried to speak to speak [sic] to Grand Pa-pa but we
don't know that he got it, so we're speaking to you.

You might know me. I was the guy sitting outside
your house at [redacted address] this morning in the
Blue Ford.   You can call me MOTHAFUCKIN
CHARLIE MANSON MOTHERFUCKER.

Now PAY ATTENTION:

6

Grand Pa-pa has kidnapped fourteen RIGHTEOUS BROTHERS AND SISTERS and taken them from their homes and their families. Their names are:

. . .

He is going to release ALL OF OUR BROTHERS AND SISTERS on MONDAY MORNING or we are going to grab [name redacted] and [name redacted] from school and FUCK THEM WITH KNIVES, put THEIR HEADS IN A COOLER and drop it off at Grand Pa-pas office.

. . .

Later that day, at 7:22 P.M., an individual identified as "Charlie Fucking Manson" at nslf_helterskelter@hotmail.com attempted to post a copy of the first threat directed at Boaz, Lawson Lamar, and Judge Komanski to a blog managed by the Southern Poverty Law Center (Count 4). Minutes later, an individual who was once again identified as "Charlie Fucking Manson" posted the threat on the website for the Anti-Defamation League (Count 5).

Several days passed, and then on May 28, 2012, the Bill White Facebook account wrote that Florida officials had not yet complied with the demand to release the American Front prisoners. The next day, the Bill White Facebook account posted that the federal government was "exhausting their limited bodyguard budget protecting the homes of the three Florida officials involved and their children/grandchildren. So, as noted, political terror is working pretty well to resolve a situation that could not have been resolved peacefully or legally." On June 2, 2012, a link was shared by the Bill White Facebook account, which included a caption containing Boaz's home address, Judge Komanski's home address, and Lawson Lamar's home address, as well as the names of Lawson Lamar's adult children and grandchildren. The caption also stated, "Are we going to let them have a monopoly on violence or are we going to stop this injustice?" In the subsequent days, the Bill White Facebook account continued to make various other posts.

Defendant was arrested in Mexico on June 8, 2012. After this date, the activity on the Bill White Facebook account stopped, as well as all outgoing communications from Defendant's personal email account dhyphen@yahoo.com.

(Criminal Case Doc. 142 at 3-9).

## III. LEGAL STANDARDS

### A. Relief Under Section 2255

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) (citation and quotation omitted). However, "a defendant must support his allegations with at least a proffer of some credible supporting evidence." *United States v. Marsh*, 548 F. Supp. 2d 1295, 1301 (N.D. Fla. 2008). Moreover, the Court "is not required to grant a petitioner an evidentiary hearing if the § 2255 motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Rosin*, 786 F.3d at 877 (citation and quotation omitted).

### B. Standard for Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a defendant must show that: (1) counsel's performance was deficient, and (2) prejudice was suffered as a result of the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In

8

determining whether counsel's performance was deficient, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Id.* at 687-88. As to the second prong, prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

## C.    Procedural Default

"As a general rule, a criminal defendant who fails to object at trial or to raise an issue on direct appeal is procedurally barred from raising the claim in a section 2255 motion absent a showing of cause for failing to preserve the claim and actual prejudice from the alleged error." *Orso v. United States,* 452 F. App'x 912, 914 (11th Cir. 2012). In the alternative, "[t]he merits of a procedurally defaulted claim may be reached, in very narrowly defined circumstances, if failure to address the claim would result in a 'fundamental miscarriage of justice.'" *Id.* "Actual innocence of the offense may be shown to satisfy the fundamental miscarriage of justice standard." *Id.*

As to those claims that have already been raised on direct appeal, "once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000) (citation omitted) (quotation omitted); *see also United States v. Wiley,* 245 F.3d

9

750, 752 (8th Cir. 2000) (claims raised and decided on direct appeal cannot be relitigated in a section 2255 motion). "A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996) (citation omitted) (quotation omitted). Hence, those claims that were raised and considered on direct appeal cannot be relitigated in a section 2255 motion.

## IV. ANALYSIS

### A. Claim One

Claim One involves a "freestanding claim of actual innocence," in which White states that he "did not transmit the communications charged in this case." (Doc. 32 at 4). However, the Eleventh Circuit does not recognize freestanding claims of actual innocence in Section 2255 cases. *See Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007) ("our precedent forbids granting habeas relief based upon a claim of actual innocence . . . in non-capital cases."); *see also Cunningham v. Dist. Att'y*, 592 F.3d 1237, 1272 (11th Cir. 2010) (same).

Further, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). It is more difficult to establish a freestanding actual innocence claim than it is to establish actual innocence under the fundamental miscarriage of justice exception to the procedural default doctrine. *See House v. Bell*, 547 U.S. 518 (2006). To satisfy this lesser standard (which itself applies "only in the extraordinary case," *House*, 126 S. Ct. at 2077), White would have to

10

demonstrate that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In other words, he would have to show it is probable that, given the new evidence, no reasonable juror would have convicted him. *See House*, 126 S. Ct. at 2077.

White has not established a freestanding actual innocence claim even under the relatively looser *Schlup* standard, and thus has not demonstrated a freestanding actual innocence claim. While White makes a generalized claim of actual innocence based upon his unsupported assertion that he did not transmit the communications charged in this case, White provides no credible factual support for his assertion. Consequently, Claim One is denied.

### B. Claim Two

White raises the following issues under Claim Two: (a) he is innocent of violating 18 U.S.C. § 875(b) because "official action may never be the object of an extortion pursuant to Sekhar v United States"; (b) trial counsel was ineffective for failing to move to dismiss the indictment because "official action may never be the object of an extortion"; (c) trial counsel was ineffective for failing to move that the "18 USC § 875(b) charges be dismissed" because the Government "attempted to prove extortion by proving that the threats were intended to cause official action"; and (d) appellate counsel was ineffective

for failing to argue on appeal that "official action may never be the object of an extortion" and for failing to "raise the issue of Sekhar." (Doc. 32 at 4-5).[3]

In *Sekhar v. United States*, 570 U.S. 729 (2013), the Supreme Court held that attempting to compel a person to recommend that his employer approve an investment does not constitute the "obtaining of property from another" under the Hobbs Act, which is set forth in 18 U.S.C.A. § 1951(b)(2). However, the holding is specific to 18 U.S.C. § 1951, and the Supreme Court explicitly stated that its opinion did not address whether official action can be the object of extortion as defined in 18 U.S.C. § 875. *Id.* at 743 n.1. As a result, White has failed to demonstrate that he is "innocent of violating 18 U.S.C. § 875(b)," and Issue 2(a) is denied.[4]

Moreover, since the *Sekhar* opinion does not apply to 18 U.S.C. § 875, Henderson was not ineffective for failing to move to dismiss the Indictment or the charges against White. Likewise, DaCruz was not ineffective for failing to raise these matters on direct appeal. Consequently, Issues 2(b), 2(c), and 2(d) are denied.

## C.  Claim Three

---

[3] White's trial counsel was Larry B. Henderson, and his appellate counsel was Tracy N. DaCruz.

[4] Issue 2(a) is also procedurally barred because it was not raised on appeal. White has not alleged or otherwise demonstrated cause or prejudice with regard to his failure to raise this issue on direct appeal. Likewise, White has neither alleged nor shown the applicability of the fundamental miscarriage of justice exception.

White raised the following issues under Claim Three: (a) the Middle District of Florida was the improper venue for Counts Four and Five; and (b) trial counsel was ineffective for failing to raise a timely objection at trial. (Doc. 32 at 5-6). According to White, the threatening statements alleged in Count Four and Five did not travel through Florida.

Issue 3(a) was raised on direct appeal, and the Eleventh Circuit Court of Appeals found that White had waived the issue because it was not raised with the Court in a timely manner. (Criminal Case Doc. 142 at 20). Since this issue was raised and considered on direct appeal, it cannot be relitigated in a section 2255 motion. As a result, Issue 3(a) is denied.

Issue 3(b) is without merit. There is no dispute that venue was proper for Counts One through Three, which involved extortionate threats to individuals residing in the Middle District of Florida. Counts Four and Five involved continuing offenses to threaten and extort, which were "begun, continued or completed" in the Middle District of Florida. *See* 18 U.S.C. § 3237(a) ("any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."). Thus, venue was proper as to those counts.

Further, venue is "determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Breitweiser*, 357 F.3d 1249, 1253

(11th Cir. 2004) (quotation omitted) (citation omitted). In the present case, the nature of the offenses included extortion, and the location of the conduct White attempted to influence was in the Middle District of Florida. Thus, venue was proper in the Middle District of Florida.

As such, Petitioner has failed to demonstrate that Henderson acted deficiently with regard to this matter or that he sustained prejudice. Consequently, Issue 3(b) is denied.

### D. Claim Four

White raises the following issues under Claim Four: (a) he was tortured while incarcerated during the course of the trial; (b) he was rendered "incompetent at trial" as a result of the torture; and (c) trial counsel was ineffective for failing to have White evaluated because of "psychiatric issues." (Doc. 32 at 8-9).

Issues 4(a) and 4(b) are procedurally barred because they were not raised on appeal. White has not demonstrated cause or prejudice with regard to his failure to raise these issues on direct appeal. Likewise, White has not shown the applicability of the fundamental miscarriage of justice exception. Thus, they are denied.

As to Issue 4(c), aside from vague and conclusory allegations, White offers no evidence that a psychological evaluation would have revealed that he was incompetent to stand trial. In order to demonstrate prejudice from counsel's failure to investigate his competency, a petitioner must show that there exists "at least a reasonable probability

14

that a psychological evaluation would have revealed that he was incompetent to stand trial." *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988).

As such, Petitioner has failed to demonstrate that Henderson acted deficiently with regard to this matter or that he sustained prejudice. Consequently, Issue 4(c) is denied.

## E.    Claim Five

White states that there was prosecutorial misconduct in his case, which consisted of the following: (a) the Government knowingly presented false testimony from Sabrina Gnos; (b) the Government failed to disclose the search warrant affidavits from the case;[5] (c) the testimony of Special Agent Majeski was false and based on a lack of personal knowledge; (d) the jury should have been instructed on "authenticating electronic communications"; (e) the Government "failed to tender dhyphen Emails in Discovery"; and (f) trial counsel was ineffective for failing to raise issues 5(a) through 5(e). (Doc. 32 at 9-13).

### 1.    *Issues 5(a) through 5(e)*

---

[5] Issue 5(b) has the following sub-issues: (1) the search warrant affidavits were materially false; (2) the search warrant returns for "bill.white.7370" were not true and accurate; (3) the Government withheld exculpatory statements made by Gnos; (4) the Government manipulated the search warrant returns to conceal exculpatory evidence; and (5) trial counsel was ineffective for failing to investigate the search warrant returns.

Issues 5(a) through 5(e) are procedurally barred because they were not raised on appeal. White has not demonstrated cause or prejudice with regard to his failure to raise these issues on direct appeal. Likewise, White has not shown the applicability of the fundamental miscarriage of justice exception. Thus, they are denied.

2. *Issue 5(f)*

White argues that Henderson was ineffective for failing to raise the issues in 5(a) through 5(e).

Whites states in Issue 5(a) that the Government knowingly presented false testimony from Gnos. In particular, White indicates that, contrary to her testimony, Gnos did not see White using the bill.white7370 account as depicted in the Government's Exhibit 5 because the National Socialist Liberation Front image on the Facebook page was not uploaded to the account until after the dates that Gnos purportedly saw White using the account.

However, White mischaracterizes Gnos' testimony. Gnos testified that she was familiar with White's Facebook page, and she recognized Government's Exhibit 5 as White's Facebook page. (Criminal Case Doc. 118 at 12). Gnos did not claim that Exhibit 5 depicted White's Facebook page exactly as it had been when she saw White using it. As such, there has been no showing that Gnos presented false testimony or that the Government knowingly presented false testimony.

White states in Issue 5(b) that Henderson failed to investigate and raise objections to the returns of the search warrants for e-mail accounts and the Facebook account in this case. White also claims that Henderson failed to request the search warrant affidavits and failed to move to suppress the search warrants based on false statements in those affidavits.[6]

White has failed to demonstrate that the affidavits in support of the search warrants were in any manner based on false statements or reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154 (1978). He also has not demonstrated that the search warrants themselves contained false statements or were in any way improper.

White states in Issue 5(c) that John Majeski's authentication testimony was knowingly false, that Majeski lacked personal knowledge of his testimony, and that Majeski's testimony was insufficient to authenticate the account user as White. However, Majeski's testimony regarding the cessation of activity on both the dhyphen@yahoo.com and bill.white7370 accounts was consistent with the evidence introduced at trial. Majeski's testimony regarding the dhyphen@yahoo.com account was consistent with the Yahoo! records admitted into evidence, and Majeski's testimony was supported by the Facebook records for bill.white7370 that were admitted into evidence. Further,

---

[6] The list of case numbers corresponding to the search warrants filed in the criminal case is set forth in the Government's Notice in Response to Court Order Re: Search Warrants. (Criminal Case Doc. 179).

White has not demonstrated that Majeski improperly identified White as the author of a particular e-mail or Facebook post or that Majeski improperly testified that White was the user of a particular account.

White states in Issue 5(d) that Henderson failed to request a jury instruction on authentication of electronic communications. However, White has failed to demonstrate any basis to support such a jury instruction.

Finally, White states in Issue 5(e) that Henderson failed to object to the admissibility of four e-mails from the dhyphen@yahoo.com account on the ground that the Government failed to provide in discovery e-mails that predated the e-mails introduced at trial and that the Government failed to provide in discovery search warrant returns that show the account was accessed from the United States while White was in Mexico. However, there has been no showing that such e-mails were subject to the rules of discovery, and, aside from speculation, Whites provides no evidence that any search warrant returns would have been beneficial. In addition, White has not established any basis upon which Henderson could have relied to object to the introduction of the e-mails.

In sum, as to Issues 5(a) through 5(e), the Court finds that White has not demonstrated that Henderson acted deficiently or that he sustained prejudice. Consequently, Issue 5(f) is denied.

### F.     Claim Six

White states that trial counsel was ineffective for failing to do the following: (a) review the discovery; (b) investigate the forensic evidence and to present forensic evidence; and (c) present "a correct forensic theory of the case." (Doc. 32 at 13-16).

  1.  *Issue 6(a)*

White claims that Henderson failed to review discovery. According to White, Henderson "told the Court on the record that he didn't review the discovery." (Doc. 32 at 13).

During the cross-examination of Majeski, Henderson informed the Court that "this morning we received approximately a couple hundred pages of material that we're in the process of reviewing. And the Government has indicated that it may be introduced in redirect based on my cross-examination of this witness." (Criminal Case Doc. 119 at 29-30). Henderson asked the Court for an opportunity to review the documents. (*Id.* at 30). The Government noted that the documents had been previously disclosed. (*Id.*). Henderson then mentioned that it would be necessary to "find portions of it that we feel should be redacted" and that he was "just alerting the Court that we're going through them as we speak." (*Id.* at 30-31).

It is clear that Henderson was expressing his need to thoroughly review the potential documents before they would be introduced into evidence to ensure necessary redactions of any prejudicial material. Under the circumstances, White has failed to

demonstrate that Henderson acted deficiently or that he sustained prejudice. As a result, Issue 6(a) is denied.

>    2.    *Issues 6(b) and 6(c)*

White argues that Henderson failed to investigate the forensic evidence (Issue 6(b)) and to present "a correct forensic theory of the case" (Issue 6(c)). (Doc. 32 at 13-16). White states that Henderson should have presented the following evidence: (1) e-mails signed by Gnos that were sent from the dhyphen account; (2) "suspicious logins" to the Facebook account; (3) a mobile device that accessed the dhyphen account and the Facebook account; (4) evidence that TOR was not used on the Facebook account before May 12, 2012;[7] (5) evidence that the Facebook account was accessed after White was arrested; (6) evidence that Gnos's own email account was hacked; and (7) evidence that White did not have access to the internet while in Mexico. (Doc. 32 at 14-16).

The record reflects that Henderson did investigate the forensic evidence and that he presented forensic evidence in support of White's defense. In particular, Henderson presented the expert testimony of computer and digital forensic examiner Richard Connor. Connor examined the dhyphen@yahoo.com account and concluded that one of

---

[7] Every modem device has an Internet Protocol ("IP") address. TOR is a program that allows a person to mask their IP address and could make it appear that their IP address originated from another country. (Criminal Case Doc. 119 at 139-41).

the e-mails in the dhyphen@yahoo.com account contained an attachment carrying a Trojan virus. (Criminal Case Doc. 119 at 136). Connor opined that this Trojan virus could have enabled an individual to install a "keylogger," which would have allowed the user to steal White's login information to e-mail and social media accounts.[8] (*Id*. at 136-37). In addition, during closing argument, Henderson argued that anyone could have accessed White's e-mail and Facebook accounts by using a key capture program or by finding his passwords. (Criminal Case Doc. 120 at 53-55).

Moreover, White has failed to show that Henderson was ineffective in failing to present the evidence noted above. First, the information involving White's access to the internet and the timing of his arrest would have been based on White's personal knowledge, which would have required White to testify. Second, Henderson presented evidence, and asserted during closing argument, that someone else could have accessed White's e-mail and Facebook accounts. Third, it is not clear that this evidence would have been probative. The evidence regarding the "suspicious logins" to Facebook, the emails signed by Gnos, the use of TOR, and the hacking of Gnos's email, even if true, would have offered little, if any, probative value. Finally, White has not shown that there is a reasonable probability that, but for Henderson's failure to present this evidence, the

---

[8] A keylogger is used to log every key stroke on a computer and can be used to steal passwords. (*Id*. at 137).

result of the proceeding would have been different. Given the significant evidence presented by the Government from the Facebook account and the dhyphen account indicating that White used those accounts, there has been no showing of prejudice. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

As a result, the Court finds that there has been no showing that counsel acted deficiently with regard to these issues, and there has been no showing of prejudice. Consequently, Claim Six is denied.

### G. Claim Seven

White asserts that Henderson failed to disclose a conflict of interest. (Doc. 32 at 16). In particular, White states that, according "to an email [Henderson] sent to the US Attorney's Office, Henderson is related by marriage to Oren Segal, Director of the Anti-Defamation League of B'nai B'rith's Center on Extremism, an alleged victim in this case." (*Id.* at 16).

On August 22, 2014, Henderson sent an e-mail to the Government's attorney, Vincent Chiu, expressing concern that a witness named Oren Segal might be married to a relative of his. (Doc. 40-4 at 1). Chiu informed Henderson that Segal was the Co-Director of the Anti-Defamation League on Extremism and Research Center. (*Id.*). Henderson then informed Chiu that "I don't know of any connection . . . ." (*Id.*). Under

the circumstances, White has failed to show that Henderson labored under a conflict of interest, and Claim Seven is denied.[9]

## H.    Claim Eight

Claim Eight involves White's contention that the crimes of which he was convicted were actually committed by individuals working for the Government. Specifically, White alleges as follows: (a) trial counsel was ineffective for failing to present evidence that White was "being impersonated"; (b) James Porazzo, an FBI informant, admitted to using White's identity to commit crimes in 2012; (c) the Government "failed to disclose the FBI-JTTF Disruption Operation that was targeting" White; (d) the Government failed to disclose impeachment evidence regarding Boaz; (e) Boaz committed perjury; (f) the Government presented false testimony from Heidi Beireich; and (g) trial counsel was ineffective for failing to raise "each issue relating to the FBI-JTTF Disruption Operation."[10]  (Doc. 32 at 19-26).

### 1.    Issue 8(a)

White argues that he has been impersonated by "various persons who, when identified, have invariably turned out to be FBI informants." (Doc. 32 at 19).  He states

---

[9] Moreover, White dismissed this claim in his Reply.  (Doc. 60 at 19).

[10] White inadvertently referred to Issue 8(g) as 8(j).  (Doc. 32 at 26).

that Henderson should have introduced evidence of other threatening letters purported to be written by him, including threatening letters and e-mails to President George W. Bush, to his tenants, to his former wife, and to the then-U.S. Attorney for the Western District of Virginia. Essentially, White argues that Henderson should have introduced these other bad acts done in White's name, which had not been otherwise the subject of the trial, and then attempted to prove that White was impersonated in those acts.

However, introducing this evidence could have been prejudicial to White's case as it could have implicated White in other crimes, despite the argument that he had been impersonated. The Court finds that White has failed to demonstrate that this evidence would have been helpful to his case or that this evidence would have been admissible.

2.     *Issue 8(b)*

White states that Gwendolyn Toynton informed him that James Porazzo had stolen White's identify and used it to commit crimes. (Doc. 32 at 20). White also claims that Toynton also told him that Porazzo "leads the American Front, that Porazzo [was] good friends with Sutter, and, that, in April-May 2012, Porazzo, and, Sutter, were discussing killing [White]." (*Id.*).

This claim, to the extent it does not incorporate allegations of ineffective assistance of counsel, is procedurally barred because it was not raised on direct appeal. To the extent White has incorporated allegations of ineffective assistance of counsel, it is without merit.

White has not shown that the failure to call Toynton as a witness was ineffective. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [this Court] will seldom, if ever, second guess." *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (quotation omitted). Moreover, at trial, during the cross-examination of Kelly Boaz and Heidi Beirich, Henderson attempted to elicit information regarding Porazzo's leadership of the American Front. (Criminal Case Doc. 117 at 185, 201-06).

Further, White has not shown that Toynton's hearsay testimony would have been admissible or that that there was a reasonable probability that, had Toynton testified, the outcome of the proceeding would have been different, considering the overwhelming evidence of his guilt. *Strickland*, 466 U.S. at 694.

### 3.     *Issues 8(c) and 8(g)*

White states that the Government "failed to disclose the FBI-JTTF Disruption Operation that was targeting" him (Issue 8(c)) and that Henderson was ineffective for failing to raise "each issue relating to the FBI-JTTF Disruption Operation" (Issue 8(g)).

Issue 8(c) was not raised on direct appeal and is procedurally barred. Issue 8(g) is without merit because White has failed to demonstrate that Henderson had knowledge of this information. Additionally, White has not shown that there was a reasonable probability that, had this information been revealed at trial, the outcome of the

proceeding would have been different, considering the overwhelming evidence of his guilt. *Strickland*, 466 U.S. at 694.

### 4. Issue 8(d)

White argues that the Government failed to disclose impeachment evidence regarding Boaz. Issue 8(d) was not raised on direct appeal and is procedurally barred.

### 5. Issue 8(e)

White argues Boaz committed perjury at sentencing, at trial regarding the American Front, at trial regarding his computer background, and at trial regarding the Aryan Nations. (Doc. 32 at 24-25). Issue 8(e) was not raised on direct appeal and is procedurally barred.

### 6. Issue 8(f)

White argues that the Government presented false testimony from Heidi Beirich. Issue 8(f) was not raised on direct appeal and is procedurally barred.

As to those issues in Claim Eight that are procedurally barred, the Court finds that White has failed to establish either cause or prejudice to overcome the procedural bar. Moreover, White does not demonstrate that his procedurally barred issues should be considered under the actual innocence and fundamental miscarriage of justice standard. Further, the entire record has been reviewed, and the Court concludes that White is unable to satisfy the exceptions to the procedural bar. Consequently, these procedurally barred issues are denied.

As to those issues in Claim Eight alleging ineffective assistance of counsel, for the reasons discussed above, there has been no showing that counsel acted deficiently or that White sustained prejudice. Therefore, those issues are denied.

## I.    Claim Nine

Whites states as follows:  (a) trial counsel was ineffective for failing to conduct a psychological examination of White and to raise issues related to White's post-traumatic stress syndrome; (b) trial counsel was ineffective for failing to present evidence of White's reduced mental capacity at sentencing; and (c) the Government obstructed justice by destroying White's prison records.  (Doc. 32 at 26-28).

### 1.    Issues 9(a) and 9(b)

In Issues 9(a) and (b), White states as follows:  (i) Henderson was ineffective for failing to conduct a psychological examination of White and raise issues related to White's post-traumatic stress syndrome; and (ii) Henderson was ineffective for failing to present evidence of White's reduced mental capacity at sentencing.

"In order to demonstrate prejudice from his lawyer's failure to have him evaluated, [White] has to show that there was at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial." *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988) (citing *Adams v. Wainwright*, 764 F.2d 1356, 1367 (11th Cir. 1985)).  "The legal test for competency to stand trial is whether, at the time of the trial and sentencing, the petitioner had 'sufficient present ability to

consult with his lawyer with a reasonable degree of rational understanding' and whether he had 'a rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402 (1960)).

White has made only vague and conclusory allegations that he was incompetent at the time of the trial and sentencing. White provides no specific examples suggesting that, at the time of his trial or at sentencing, he did not have the ability to consult with his lawyer or that he did not understand the proceedings against him. Although White mentions that he had a history of mental problems, he fails to show how these past problems affected his ability to consult with his lawyer or understand the proceedings against him. White has not presented any evidence, much less a reasonable probability, that a psychological evaluation would have found him incompetent.

As such, the Court finds that Henderson did not act deficiently with regard to these issues and that there has been no showing of prejudice. Consequently, Issues 9(a) and 9(b) are denied.

> 2.     *Issue 9(c)*

White argues that the Government "obstructed justice by destroying [his] prison records." (Doc. 32 at 28). Issue 9(c) was not raised on direct appeal and is procedurally barred. The Court finds that White has failed to establish either cause or prejudice to overcome the procedural bar. Moreover, White does not demonstrate that his procedurally barred issues should be considered under the actual innocence and

fundamental miscarriage of justice standard. Further, the entire record has been reviewed, and the Court concludes that White is unable to satisfy the exceptions to the procedural bar. Consequently, Issue 9(c) is denied.

### J.    Claim Ten

White argues that there were "fundamental defects at [his] sentencing," which included the following: (a) Boaz and Thomas Lamar presented perjured "victim impact testimony" and Henderson was ineffective for failing to raise certain objections; (b) he "expects" that his convictions in "WD VA 08-cr-054" and "White v. True SD Ill 16-cv-1374" will be vacated; and (c) he is "actually innocent" with regard to the convictions in "WD Va 16-cr-80934" and "ND Ill 08-cr-851." (Doc. 32 at 29).

#### 1.    Issue 10(a)

White states that Boaz and Thomas Lamar presented perjured "victim impact testimony" and Henderson was ineffective for failing to raise certain objections. The portion of Issue 10(a) involving perjured testimony was not raised on direct appeal and is procedurally barred. The Court concludes that White is unable to satisfy the exceptions to the procedural bar, and, therefore, it is denied.

White also alleges that Henderson was ineffective for not raising an objection to the Court's failure to use the proper definition of terrorism and for failing to object to the perjured testimony of Boaz and Lamar. This issue is without merit. Aside from vague and conclusory allegations, White has presented no evidence that the Court improperly

defined terrorism at sentencing or that Boaz and Lamar presented perjured testimony. As such, the Court finds that Henderson was not ineffective with regard to this matter, and there has been no showing of prejudice.

### 2. *Issues 10(b) and 10(c)*

Whether White is successful in his attempts to vacate his prior convictions is speculative, and these issues are not cognizable as they are not ripe for review. Moreover, these issues are procedurally barred. As a result, Issues 10(b) and 10(c) are denied.

### K. Claim Eleven

White argues as follows: (a) Gnos lied about a plot to kill twenty people; (b) "Gnos' testimony authenticating the books was false"; (c) Gnos testified falsely as to other matters; and (d) trial counsel was ineffective for failing to raise Issues 11(a) through (c). (Doc. 32 at 29-31).

### 1. *Issues 11(a) through 11(c)*

Issues 11(a) through 11(c) are procedurally barred because they were not raised on appeal. White has not demonstrated cause or prejudice with regard to his failure to raise these issues on direct appeal. Likewise, White has not shown the applicability of the fundamental miscarriage of justice exception. Thus, they are denied.

### 2. *Issue 11(d)*

White argues that Henderson was ineffective for failing to raise the issues in 11(a) through 11(c). White states in Issues 11(a) through 11(c) that Gnos "lied about a plot to

kill twenty people," falsely authenticated a book written by White, and gave other false or contradictory testimony at trial. (Doc. 32 at 29-31). Aside from vague and conclusory allegations, White provides no evidence that Gnos testified falsely at trial.

The record reflects that Henderson cross-examined Gnos extensively at trial. Henderson impeached Gnos' testimony regarding inconsistencies between her testimony at trial in this case and her testimony at another trial in which she was a witness and inconsistencies in her statements to law enforcement. (Criminal Case Doc. 118 at 53-55, 73). Henderson also questioned Gnos about her motive to threaten Tom Bondurant. (*Id.* at 74-76). Henderson also elicited a statement from Gnos that she had difficulty remembering things due to the medications she was taking. (*Id.* at 55).

In sum, as to Issues 11(a) through 11(c), the Court finds that White has not demonstrated that Henderson acted deficiently or that he sustained prejudice. Consequently, Issue 11(d) is denied.

### L.    Claim Twelve

White states that Henderson was ineffective based on the following:    (a) Henderson failed to object to the foundation for Beirich's testimony; (b) Henderson failed to object to inflammatory rhetoric; (c) Henderson failed to request a limiting instruction about the American Front testimony; and (d) Henderson prejudiced the jury against White.

####     1.    *Issue 12(a)*

31

White argues that Henderson failed to object to the foundation of Beirich's testimony. At trial, Boaz testified regarding his involvement with an investigation of the American Front and regarding his receipt of a threatening communication. (Criminal Case Doc. 117 at 176-80). Beirich, Director of the Southern Poverty Law Center's ("SPLC") Intelligence Project, testified as to her role in the SLPC and authenticated the threatening communication that someone attempted to post as a comment to the SPLC website. (*Id.* at 188-94). Beirich testified that she was concerned about the comment and immediately contacted law enforcement in Florida. (*Id.* at 193). In addition, Beirich provided background information relating to some of the groups referenced in the e-mails, such as the National Socialist Liberation Front (NSLF) and the American Front. (*Id.* at 194-96). She also testified as to White's involvement in these groups. (*Id.* at 195-96).

White fails to demonstrate that Beirich's testimony was in any manner improper or that Henderson had any basis upon which to object to her testimony. Further, White fails to demonstrate that Beirich's testimony was in any manner inadmissible or that the failure to object to her testimony prejudiced his defense. Under the circumstances, White has failed to demonstrate that Henderson acted deficiently or that he sustained prejudice. As a result, Issue 12(a) is denied.

### 2. *Issue 12(b)*

White argues that Henderson failed to object to inflammatory rhetoric at trial. He states that the Government "inflamed the jury by introducing inflammatory rhetoric

through Boaz, and, Beireich [sic], about 'terrorism,' 'extremism,' 'hate,' 'neo-Nazis,' and 'racism.'" (Doc. 32 at 31). This issue is without merit. White has failed to establish that the mere mention of these words in any manner prejudiced the jury. Under the circumstances, White has failed to demonstrate that Henderson acted deficiently or that he sustained prejudice. As a result, Issue 12(b) is denied.

### 3. *Issue 12(c)*

White argues that Henderson should have requested a limiting jury instruction indicating that White was not affiliated with the American Front and that testimony about the American Front should not have been attributed to White. (Doc. 32 at 32). This issue is without merit. White has failed to demonstrate that the evidence at trial supported such an instruction. Moreover, White has not established that the failure to request such an instruction affected the outcome of the trial. Under the circumstances, White has failed to demonstrate that Henderson acted deficiently or that he sustained prejudice. As a result, Issue 12(c) is denied.

### 4. *Issue 12(d)*

White argues that Henderson was ineffective because he introduced evidence of the murders of Joe Tomassi and David Lynch during cross-examination and emphasized the evidence during closing argument. (Doc. 32 at 32).

During the cross-examination of Beirich, Henderson elicited from Beirich that Tomassi was a prominent Neo-Nazi in the late 1960's who had been killed by members

of a competing Neo-Nazi group. (Criminal Case Doc. 117 at 198). Beirich also testified that David Lynch was the former leader of the American Front and that he had been murdered a couple of years prior to trial. (*Id.* at 202). Henderson also elicited testimony from Beirich suggesting that James Porazzo benefitted from Lynch's murder. (*Id.* at 202-04). At closing, Henderson argued that more extreme elements of the white supremacist movement were framing White for the threatening communications in order to eliminate him. (Criminal Case Doc. 120 at 55-62). In particular, Henderson made reference to the murders of other white supremacist leaders as examples of "in-fighting" between these white supremacist groups. (*Id.* at 61). Henderson implied to the jury that White was a victim of this in-fighting and that White was being framed by rivals in the white supremacist community.

Clearly, Henderson used the examples of the leaders being murdered in order to support his argument to the jury that White was being framed by rivals. This was reasonable trial strategy. Under the circumstances, White has failed to demonstrate that Henderson acted deficiently or that he sustained prejudice. As a result, Issue 12(d) is denied.

### M.    Claim Thirteen

White argues that "I claim every other ground for relief that the Court can discern from a liberal reading of my pro se petition." (Doc. 32 at 32). The Court has carefully and thoroughly reviewed each of White's claims and determines that none of his claims

34

has merit. Any allegations that are not specifically addressed herein have been found to be without merit and are denied.

## IV.  CERTIFICATE OF APPEALABILITY

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

White fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, White cannot show that jurists of reason would find this Court's procedural rulings debatable. White fails to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny White a certificate of appealability.

## V.  CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.     The Fourth Amended Motion to Vacate, Set Aside, or Correct Sentence (Doc. 32) is **DENIED**.

2.     This case is **DISMISSED with prejudice**.

3. Petitioner's Motion to Voluntarily Dismiss Grounds for Relief (Doc. 63) is **GRANTED**.

4. Petitioner is **DENIED** a certificate of appealability.

5. The Clerk of the Court is directed to enter judgment in favor of Respondent and to close this case. A copy of this Order and the judgment shall also be filed in criminal case number 6:13-cr-304-Orl-28GJK.

6. The Clerk of the Court is directed to terminate the section 2255 motion (Criminal Case Doc. 190) filed in criminal case number 6:13-cr-304-Orl-28GJK.

**DONE** and **ORDERED** in Orlando, Florida on February 14, 2019.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party
OrlP-2 2/14